Scott W. Friestad
James T. Coffman
Richard Hong (Trial Counsel)
Melissa A. Robertson
Jeffrey B. Finnell

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
(202) 551-4431 (Hong)
hongr@sec.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : | | |
| 100 F Street, N.E. | : | |
| Washington, DC 20549 | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. |
| | : | |
| VERITAS SOFTWARE CORPORATION, | : | |
| 20330 Stevens Creek Blvd. | : | |
| Cupertino, California 95014 | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges as follows:

### SUMMARY

1.     This is a financial fraud case.  Veritas Software Corporation ("Veritas" or the "Company") artificially inflated reported revenues in connection with a $20 million round-trip transaction with America Online, Inc. ("AOL") and smaller round-trip transactions with two other Internet companies in 2000.  In addition, to produce what it believed were exceptional or "museum quality" financial results, Veritas systematically

manipulated its financial results through 2002 by (a) periodically recording and maintaining excess accrued liabilities or cushions in its accrual accounts; (b) cutting off professional service revenue upon reaching internal targets; and (c) inflating its deferred revenue balance. Each of these business practices violated the federal securities laws and constituted an unlawful departure from generally accepted accounting principles ("GAAP").

2.      As a result, the Company reported materially false and misleading financial results in periodic reports filed with the Commission and other public statements from at least January 2000 through 2003, and its January 28, 2004 earnings release of fourth quarter and annual results for 2003.

3.      On January 17, 2003, Veritas announced that it would restate its financial statements in order to reverse the $20 million of improperly recognized revenue from the AOL round-trip transaction and correct the related over-stated expenses (the "2003 Restatement").

4.      On March 15, 2004, the Company announced a second restatement of its financial statements to correct, among other things, the accounting of unsubstantiated accruals of certain expenses, the improper quarterly revenue cut-off of professional services revenues, and the overstatement of deferred revenues (the "2004 Restatement").

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this action under Section 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77v(a)], and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and (e) and 78aa]. Defendant, directly or indirectly, made use of the means or

instrumentalities of interstate commerce, of the mails, or of the facilities of a national

securities exchange in connection with the transactions, acts, practices, and courses of

business alleged in this Complaint.

6.    Venue is appropriate in this Court under Section 22(a) of the Securities

Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because

the defendant does business in this judicial district and certain acts or transactions

constituting the violations occurred in this district.

## DEFENDANT

7.    Veritas Software Corporation, now a wholly owned subsidiary of

Symantec Corporation, is a software company headquartered in Cupertino, California that

creates and licenses data storage software.  At the time of the events alleged in this

Complaint, Veritas' common stock was registered with the Commission pursuant to

Section 12(g) of the Exchange Act and was quoted on the Nasdaq National Market.

Veritas filed annual, quarterly, and current reports with the Commission on Forms 10-K

10-Q and 8-K.  Veritas registered securities offerings from August 2000 through

September 2003 by filing with the Commission Forms S-3, S-4 and S-8.  On July 2,

2005, Symantec Corporation acquired Veritas.

3

**FACTS**

**I.**

**AOL Transaction**

**A.     Veritas Improperly Inflated the Price of a Software
         License as Part of a Round-trip Transaction with AOL**

8.      In September 2000, Veritas agreed to sell AOL an unlimited license for all of its software products as well as certain services, consulting and training commitments (the "License").  The parties agreed to a price of $30 million for the License.

9.      During negotiations in late August and September 2000, AOL proposed that Veritas purchase online advertising from AOL.  Veritas rejected AOL's proposal.

10.     Hours before the parties were set to execute the License agreement, AOL offered to pay an additional $20 million for the License in return for Veritas' agreement to purchase $20 million of AOL online advertising.  Veritas agreed.  The parties did not change the other terms of the License as a result of the price increase nor did they engage in any substantive negotiations regarding the online advertising contract other than the time period over which the advertising would be provided.  By oral side agreement, the parties further agreed to simultaneously wire payments of the amounts due under the contracts.

11.     Veritas and AOL documented the round-trip transaction as if it was two separate, bona fide transactions, which concealed the fact that AOL agreed to pay an additional $20 million for the License in exchange for Veritas' agreement to purchase $20 million in online advertising.  Veritas improperly recognized the additional $20 million as license and service revenue, and AOL improperly recognized the $20 million as online ad revenue.

12.     The net effect of the inflated prices of the License and the online ad deal improperly inflated Veritas' fourth quarter and 2000 annual earnings by 2 cents a share – a material amount for Veritas.

13.     On October 23, 2002, well after the Commission commenced its investigation, AOL announced that it would restate its financial results. As part of that restatement, AOL reversed the $20 million of improperly recognized advertising revenue derived from its transaction with Veritas.

**B.     Veritas Lied to and Withheld Material Information from its Independent Auditors**

14.     In December 2000, Veritas' independent auditors reviewed the License as part of their regular in-quarter review of significant revenue transactions. Veritas did not tell the auditors about the existence of the contingent advertising deal. As a result, the auditors reviewed and treated the License as a stand-alone revenue contract.

15.     Again, in January 2001, during its audit of Veritas' 2000 financial statements, Veritas did not inform the auditors of the true, contingent nature of the AOL contracts -- namely, that Veritas only agreed to enter the advertising contract after AOL agreed to fund that "purchase" by inflating the price of the License.

16.     When the auditors asked Veritas to explain the business rationale behind the contracts and justify the prices paid, Veritas falsely represented that: the two AOL contracts were entered into for valid business reasons; the AOL software sale and advertising purchase were separate and not part of any overall arrangement between the two companies; AOL's commitment to pay the fee for the License was, from its initiation, never contingent upon Veritas entering into the advertising purchase; and the contracts were fairly priced at $50 million and $20 million, respectively.

5

17.     Also, in January 2001, Veritas gave its independent auditors a materially misleading confirmation of the purported terms of the license, failing to disclose the contingent relationship of the parties' entry into the License at a $50 million price and their entry into the advertising contract, as well as the parties' oral agreement to modify the payment terms under the contracts to require simultaneous wire transfers.

**C.      Veritas Aided and Abetted in AOL's
        Fraudulent Reporting of the Round-trip**

18.     AOL and AOL Time Warner Inc. (after the merger of AOL and Time Warner Inc. on January 11, 2001) were public companies with securities registered with the Commission (collectively, "AOL").

19.     AOL used the round-trip transaction with Veritas to improperly inflate its revenues by $20 million by recording and reporting these contracts at their respectively stated contract values of $50 million and $20 million.

20.     By agreeing to inflate the sales price of the License and enter into the concomitant advertising contract and documenting the round-trip transaction as if it was two separate, bona fide transactions, Veritas aided and abetted AOL's fraud.

**D.      Veritas Restated its Financial Statements
        to Correct the Accounting Treatment for the
        AOL Transaction and Two Other Round-trips**

21.     On January 17, 2003, Veritas announced its 2003 Restatement in order to reverse the $20 million of improperly recognized revenue from the inflated AOL transaction.

22.     As part of this restatement, Veritas also reversed approximately $1 million of improperly recognized revenue resulting from transactions with two other Internet companies, who required Veritas to purchase online advertising as part of their agreement

to purchase Veritas licenses. As with the AOL transaction, Veritas withheld material information from its independent auditors in its 2000 year-end audit with respect to these two concurrent transactions.

23.    The 2003 Restatement was materially deficient, leading to a second restatement described below.

## II.

### Veritas' Accounting Manipulations Lead to a Second Restatement

24.    During at least 2000 through 2002, Veritas engaged in a scheme consisting of three separate improper courses of conduct to manage its earnings and artificially smooth its financial results, all of which together distorted Veritas' reported financial results for 2000 through 2003, as described below.

### A.    Veritas Improperly Recorded and Maintained Accrued Liabilities, Employing "Accrual Wish Lists" and "Cushion Schedules"

25.    Veritas recorded, maintained and tracked a variety of accrued liability balances (including a variety of compensation, bonus, and incentive accruals, fixed asset reserves and general reserves) that were not in conformity with GAAP because they were unsubstantiated and lacked properly documented support (the "improper accrued liabilities"). As a result, Veritas failed to accurately report its quarterly and annual financial results, causing overstatements of earnings in some quarters and understatements during other quarters.

26.    After properly-determined accruals had been made, and as part of its quarterly process of closing its books and preparing financial statements, Veritas' finance department requested that financial analysts in finance and the operational units submit

additional expenses for consideration of accruing in that period. These proposed, non-GAAP accruals were accumulated on an "accrual wish list."

27.    Veritas improperly evaluated the recording of these additional non-GAAP expenses from the wish list based primarily on whether: (a) there was room in the budget; (b) they could be taken as expenses without adversely impacting the desired financial results for the quarter; and/or (c) they would benefit results in the subsequent quarter by recording such expenses in the current quarter.

28.    Veritas recorded these accruals from the wish lists without regard to GAAP. Rather, Veritas reviewed the impact of select proposed accruals on the financial statements for that quarter, including the impact on earnings. Veritas decided which accruals, and in what amounts, to add to the accrued liabilities in order to achieve desired financial results. Veritas improperly used these proposed accrued expenses in an effort to manage its earnings per share results.

29.    Veritas tracked the improper accrued liabilities in "cushion schedules" prepared on a quarterly (and at times monthly) basis. The cushion schedules reflected the value of improper accrued liabilities that were available to fund new or unplanned expenditures without adversely impacting the Company's planned earnings for a quarter.

30.    As summarized below, the cumulative balances of over-stated accrued liabilities tracked on the Company's cushion schedules for each quarter from 2000 through 2002 ranged from approximately $10 million to $21 million.



31.    As part of its 2004 Restatement, Veritas corrected and restated its accounting for reserves in its financial statements for fiscal years 2000 through 2003.

**B.    Veritas Improperly Cut Off its
    Recognition of Professional Service Revenue**

32.    Through 2002, Veritas prematurely cut off its recognition of professional service revenues.

33.    Each quarter, Veritas set internal targets for revenues.  Later in the quarter, when it reached its revenue targets, Veritas stopped recognizing additional professional service revenue that it had fully delivered and earned in the current quarter.  Veritas' failure to recognize revenues earned did not comply with GAAP.

34.    By this practice, Veritas sought to improperly manage its quarterly professional service revenues, push additional service revenues into the next quarter, and cause the percentage of reported revenues attributable to professional services to be

smaller than it otherwise would be; and conversely, the ratio of reported license revenues would be larger than it should have been. Analysts tracked the license-to-service revenue mix as percentages of total revenues each quarter. License revenue that constituted a larger percentage of total revenue was more desirable because of the higher margins on license revenue.

35.     As part of its 2004 Restatement, Veritas corrected the accounting of the improper quarterly revenue cut-off practice in its financial statements.

**C.     Veritas Improperly Manipulated its Deferred Revenue Balance**

36.     Veritas also manipulated its financial reporting by improperly inflating its reported deferred revenue on its balance sheet for the second quarter of 2002 by approximately $7 million.

37.     During the end of the second quarter of 2002, Veritas noticed that its deferred revenue balance was substantially lower than expected and less than it had been in the prior quarter. Concerned that analysts would view this declining deferred revenue balance negatively and interpret it as an indication that the amount of Veritas' new business had declined, possibly signaling a decline in revenues for the next quarter, Veritas improperly inflated its deferred revenue balance. Veritas did so by intentionally failing to subtract certain amounts from the deferred revenue balance that were attributable to unpaid contracts – something the Company normally did in reporting its deferred revenues in its quarterly financial statements.

38.     To conceal this improper inflation, Veritas provided its independent auditors with a falsified account reconciliation schedule. The schedule falsely listed the status of certain licenses as "paid," when such items were known to have been unpaid, so

10

that the deferred revenues associated with those contracts would not be subtracted from the deferred revenue balance.

39.    As part of its 2004 Restatement, Veritas corrected its deferred revenue balance, which reduced the reported deferred revenue balance by approximately $7 million for the second quarter of 2002.

## FIRST CLAIM FOR RELIEF

### Fraud

Violations of Section 17(a) [15 U.S.C. § 77q(a)] of the
Securities Act, Section 10(b) of the Exchange Act [15
U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R.
§ 240.10b-5]

40.    Paragraphs 1 through 39 are re-alleged and incorporated by reference.

41.    By reason of the foregoing, defendant directly or indirectly, acting intentionally or recklessly, by use of the means or instrumentalities of interstate commerce or of the mails, in connection with the offer, sale, or purchase of securities: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; (c) obtained money or property by means of any untrue statement of a material fact or any omission of a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or (d) engaged in transactions, acts, practices, or courses of business which operated as a fraud or deceit upon other persons.

42.    By reason of the foregoing, defendant violated, and unless restrained will violate, Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5.

11

## SECOND CLAIM FOR RELIEF

### Reporting Violations

Violations of Section 13(a) of the Exchange Act [15 U.S.C.
§ 78m(a)] and Exchange Act Rules 12b-20, 13a-1, 13a-11,
and 13a-13 [17 C.F.R. § 240.12b-20, § 240.13a-1, §
240.13a-11, and § 240.13a-13]

43.    Paragraphs 1 through 39 are re-alleged and incorporated by reference.

44.    The Exchange Act and Exchange Act Rules require every issuer of

registered securities to file reports with the Commission that accurately reflect the

issuer's financial performance and provide other true and accurate information to the

public.

45.    By reason of the foregoing, defendant violated, and unless restrained will

violate, Section 13(a) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1, 13a-

11, and 13a-13.

## THIRD CLAIM FOR RELIEF

### Record Keeping Violations

Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the
Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and
78m(b)(2)(B)] and Exchange Act Rule 13b2-1 [17 C.F.R.
§ 240.13b2-1]

46.    Paragraphs 1 through 39 are re-alleged and incorporated by reference.

47.    The Exchange Act and Exchange Act Rules promulgated thereunder require

each issuer of registered securities to make and keep books, records, and accounts which,

in reasonable detail, accurately and fairly reflect the business of the issuer and to devise

and maintain a system of internal controls sufficient to provide reasonable assurances

that, among other things, transactions are recorded as necessary to permit preparation of

financial statements and to maintain the accountability of accounts.

48.    By reason of the foregoing, defendant violated, and unless restrained will violate, Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Exchange Act Rule 13b2-1.

### FOURTH CLAIM FOR RELIEF

#### Aiding and Abetting Fraud

Violations of Section 10(b) of the Exchange Act [15 U.S.C.
§ 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. §
240.10b-5]

49.    Paragraphs 1 through 3, and 5 through 23, are re-alleged and incorporated by reference.

50.    As set forth more fully above, AOL, directly or indirectly, by use of the means or instrumentalities of interstate commerce, or by the use of the mails and of the facilities of a national securities exchange, in connection with the purchase or sale of securities: has employed devices, schemes, or artifices to defraud, has made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or has engaged in acts, practices, or courses of business which operate or would operate as a fraud or deceit upon any person.

51.    As detailed above, defendant acted with knowledge or recklessly, and provided substantial assistance to AOL in violation of Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.

52.    Based on the foregoing, defendant aided and abetted violations of Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.

## REQUEST FOR RELIEF

The Commission respectfully requests that the Court enter an Order:

(i)    Permanently restraining and enjoining defendant from violating Section 17(a)

of the Securities Act, Sections 10(b), 13(a), 13(b)(2)(A), and 13(b)(2)(B) of

the Exchange Act, and Exchange Act Rules 10b-5, 12b-20, 13a-1, 13a-11,

13a-13, and 13b2-1;

(ii)    Permanently restraining and enjoining defendant, its subsidiaries, officers,

directors, agents, servants, employees, and attorneys-in-fact, and all persons in

active concert or participation with them, from aiding and abetting violations

of any of the above-listed securities laws;

(iii)    Ordering defendant to disgorge ill-gotten gains, including pre-judgment and

post-judgment interest, resulting from the violations alleged in this Complaint;

(iv)    Ordering defendant to pay a civil penalty; and

(v)    Granting such other relief as the Court deems just and appropriate.

Dated:  February **20**, 2007

Respectfully submitted,

Scott W. Friestad
James T. Coffman
Richard Hong (Trial Counsel)
Melissa A. Robertson (DC Bar No. 396384)
Jeffrey B. Finnell (DC Bar No. 441525)

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC  20549-4010-A
(202) 551-4431 (Hong)
hongr@sec.gov

14

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Securities and Exchange Commission | Veritas Software Corporation |

|  |  |
|---|---|
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT     88888 <br> (IN U.S. PLAINTIFF CASES ONLY) <br> NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Richard Hong <br> Securities and Exchange Commission <br> 100 F Street, N.E. <br> Washington, DC  20549 <br> 202-551-4431 | William R. Baker, III <br> Latham & Watkins LLP <br> 555 11th Street, N.W., Suite 1000 <br> Washington, DC  20004 <br> 202-637-2200 |

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ⊙ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane <br> ☐ 315 Airplane Product Liability <br> ☐ 320 Assault, Libel & Slander <br> ☐ 330 Federal Employers Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle Product Liability <br> ☐ 360 Other Personal Injury <br> ☐ 362 Medical Malpractice <br> ☐ 365 Product Liability <br> ☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act <br><br> **Social Security:** <br> ☐ 861 HIA ((1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g) <br> **Other Statutes** <br> ☐ 891 Agricultural Acts <br> ☐ 892 Economic Stabilization Act <br> ☐ 893 Environmental Matters <br> ☐ 894 Energy Allocation Act <br> ☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment. <br><br> *(If Antitrust, then A governs)* |

| ⊙ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☒ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530** Habeas Corpus-General<br>☐ **510** Motion/Vacate Sentence | ☐ **442** Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895** Freedom of Information Act<br>☐ **890** Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152** Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710** Fair Labor Standards Act<br>☐ **720** Labor/Mgmt. Relations<br>☐ **730** Labor/Mgmt. Reporting & Disclosure Act<br>☐ **740** Labor Railway Act<br>☐ **790** Other Labor Litigation<br>☐ **791** Empl. Ret. Inc. Security Act | ☐ **441** Voting (if not Voting Rights Act)<br>☐ **443** Housing/Accommodations<br>☐ **444** Welfare<br>☐ **440** Other Civil Rights<br>☐ **445** American w/Disabilities-Employment<br>☐ **446** Americans w/Disabilities-Other | ☐ **110** Insurance<br>☐ **120** Marine<br>☐ **130** Miller Act<br>☐ **140** Negotiable Instrument<br>☐ **150** Recovery of Overpayment & Enforcement of Judgment<br>☐ **153** Recovery of Overpayment of Veteran's Benefits<br>☐ **160** Stockholder's Suits<br>☐ **190** Other Contracts<br>☐ **195** Contract Product Liability<br>☐ **196** Franchise | ☐ **441** Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

15 USC 77q(a), 15 USC 78j(b), 17 CFR 240.10b-5 (securities fraud claim); and other claims relating to securities violations

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** _____   Check YES only if demanded in complaint   **JURY DEMAND:** YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  Feb. 20, 2007   SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

VERITAS SOFTWARE CORPORATION,

Defendant.

C.A. No. _____

## FINAL JUDGMENT AS TO DEFENDANT VERITAS SOFTWARE CORPORATION

The Securities and Exchange Commission ("Commission") having filed a Complaint and Defendant Veritas Software Corporation ("Defendant") having entered a general appearance, consented to the Court's jurisdiction over Defendant and the subject matter of this action, consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction), waived findings of fact and conclusions of law, and waived any right to appeal from this Final Judgment:

I.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, or aiding or abetting violations of, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5], by using, or knowingly or recklessly providing substantial assistance to any person or entity using,

any means or instrumentality of interstate commerce, or of the mails, or of any facility of any

national securities exchange, in connection with the purchase or sale of any security:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to make any untrue statement of a material fact or to omit to state a material fact

necessary in order to make the statements made, in the light of the circumstances

under which they were made, not misleading; or

(c)     to engage in any act, practice, or course of business which operates or would

operate as a fraud or deceit upon any person.

## II.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that

Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active

concert or participation with them who receive actual notice of this Final Judgment by personal

service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the

Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any

security by the use of any means or instruments of transportation or communication in interstate

commerce or by use of the mails, directly or indirectly:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to obtain money or property by means of any untrue statement of a material fact

or any omission of a material fact necessary in order to make the statements

made, in light of the circumstances under which they were made, not misleading;

or

2

(c)     to engage in any transaction, practice, or course of business which operates or

would operate as a fraud or deceit upon the purchaser.

### III.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that

Defendant and Defendant's agents, servants, employees, attorneys, and all persons in

active concert or participation with them who receive actual notice of this Final Judgment

by personal service or otherwise are permanently restrained and enjoined from violating,

directly or indirectly, Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and

Exchange Act Rules 12b-20, 13a-1, 13a-11, and 13a-13  [17 C.F.R. §§ 240.12b-20,

240.13a-1, 240.13a-11, and 240.13a-13] by:

(a)     failing to file with the Commission any report or statement required to be filed

with the Commission pursuant to Section 13(a) of the Exchange Act [15 U.S.C. §

78m(a)] and Exchange Act rules, or such information and documents required by

the Commission to keep reasonably current the information and documents

required to be included in or filed with an application or registration statement

filed pursuant to Section 12 of the Exchange Act; or

(b)     failing, in addition to the information expressly required to be included in a

statement or report, to add such further material information as is necessary to

make the required statements, in the light of the circumstances under which they

were made, not misleading.

3

## IV.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that

Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active

concert or participation with them who receive actual notice of this Final Judgment by

personal service or otherwise are permanently restrained and enjoined from violating,

directly or indirectly, Sections 13(b)(2)(A) and (B) of the Exchange Act and Exchange Act

Rule 13b2-1 [15 U.S.C. § 78m(b)(2)(A) and (B)) and 17 C.F.R. § 240.13b2-1] by:

(a)     failing to make and keep books, records, and accounts, which, in reasonable
detail, accurately and fairly reflect the transactions and dispositions of its assets;

(b)     failing to devise and maintain a system of internal accounting controls sufficient
to provide reasonable assurances that: transactions are executed in accordance
with management's general or specific authorization; transactions are recorded as
necessary to permit preparation of financial statements in conformity with
generally accepted accounting principles or any other criteria applicable to such
statements, and to maintain accountability for assets; access to assets is permitted
only in accordance with management's general or specific authorization; and the
recorded accountability for assets is compared with the existing assets at
reasonable intervals and appropriate action is taken with respect to any
differences; or

(c)     falsifying or causing to be falsified any book, record, or account subject to
Section 13(b)(2)(A) of the Exchange Act.

## V.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that

Defendant is liable for disgorgement of $1, representing profits gained or losses avoided as a

result of the conduct alleged in the Complaint, and a civil penalty in the amount of $30 million

pursuant to Section 20(d)(1) of the Securities Act [15 U.S.C. § 77t(d)(1)] and Section

21(d)(3)(A) of the Exchange Act [15 U.S.C. § 78u(d)(3)(A)]. Defendant shall satisfy these

obligations by paying $30,000,001 within ten business days of the entry of the Final Judgment.

Defendant shall make the payment to the Clerk of this Court, together with a cover letter

identifying Veritas Software Corporation as the defendant in this action; setting forth the title

and civil action number of this action and the name of this Court; and specifying that payment is

made pursuant to this Final Judgment. Defendant shall simultaneously transmit photocopies of

such payment and letter to the Commission's counsel in this action. Defendant shall also

transmit to Commission's counsel a copy of the Court's confirmation of receipt of the payment.

By making this payment, Defendant relinquishes all legal and equitable right, title, and interest

in such funds, and no part of the funds shall be returned to Defendant. Defendant shall pay post-

judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

The Clerk shall deposit the funds into an interest bearing account with the Court Registry

Investment System ("CRIS") or any other type of interest bearing account that is utilized by the

Court. These funds, together with any interest and income earned thereon (collectively, the

"Fund"), shall be held in the interest bearing account until further order of the Court. In

accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative

Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States.

The Commission may by motion propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. Defendant shall pay all additional costs incurred under the plan resulting from the distribution or payment of the $30,000,001 disgorgement and civil penalty, and there will be no deduction from the Fund for those additional costs. Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that it is entitled to, nor shall it further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant shall, within thirty days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the

6

amount of the civil penalty imposed in this Judgment.  Moreover, in the event the Fund is
distributed through a Related Investor Action, no Fund payments shall be distributed as payment
for attorneys' fees or expenses incurred in a Related Investor Action, nor shall any Fund
payments be considered in calculating the attorneys' fees or expenses counsel would be entitled
to collect in a Related Investor Action.  For purposes of this paragraph, a "Related Investor
Action" means a private damages action brought against Defendant by or on behalf of one or
more investors based on substantially the same facts as alleged in the Complaint in this action.

## VI.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Consent is
incorporated herein with the same force and effect as if fully set forth herein, and that Defendant
shall comply with all of the undertakings and agreements set forth therein.

7

**VII.**

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that this

Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final

Judgment.

      **SO ORDERED**, this ___ day of _____, 2007.


_____

UNITED STATES DISTRICT JUDGE

## **SERVICE LIST**

William R. Baker III, Esq.
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
Tel:  (202) 637-2200
Fax:  (202) 637-2201
william.baker@lw.com

**Attorney for Defendant**


Richard Hong, Esq.
Assistant Chief Litigation Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-0911
Tel:  (202) 551-4431 (Hong)
Fax: (202) 772-9246
hongr@sec.gov

**Attorney for Plaintiff**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>VERITAS SOFTWARE CORPORATION,<br><br>Defendant. | C.A. No. _____ |

## CONSENT OF DEFENDANT VERITAS SOFTWARE CORPORATION

1.    Defendant Veritas Software Corporation ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.    Without admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

(a)    permanently restrains and enjoins Defendant from violating Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; Sections 10(b), 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)]; and Exchange Act Rules 10b-5, 12b-20, 13a-1, 13a-11, 13a-13, and 13b2-1 [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, and 240.13b2-1]; and permanently

1

restrains and enjoins Defendant from aiding and abetting violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5];

(b)    orders Defendant to pay disgorgement in the amount of $1; and

(c)    orders Defendant to pay a civil penalty in the amount of $30 million under Section 20(d)(1) of the Securities Act [15 U.S.C. § 77t(d)(1)] and Section 21(d)(3)(A) of the Exchange Act [15 U.S.C. § 78u(d)(3)(A)].

3.    Defendant acknowledges that the civil penalty paid pursuant to the Final Judgment may be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. Defendant agrees to pay all additional costs incurred under any distribution plan resulting from the payment of the civil penalty, and there will be no deduction from the Fair Fund for those additional costs. Regardless of whether any such Fair Fund distribution is made, the civil penalty shall be treated as a penalty paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant agrees that it shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that it is entitled to, nor shall it further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant agrees that it shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to

change the amount of the civil penalty imposed in this action.  For purposes of this paragraph, a

"Related Investor Action" means a private damages action brought against Defendant by or on

behalf of one or more investors based on substantially the same facts as alleged in the Complaint

in this action.

4.     Defendant agrees that it shall not seek or accept, directly or indirectly,

reimbursement or indemnification from any source, including but not limited to payment made

pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays

pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof

are added to a distribution fund or otherwise used for the benefit of investors.  Defendant further

agrees that it shall not claim, assert, or apply for a tax deduction or tax credit with regard to any

federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Final

Judgment, regardless of whether such penalty amounts or any part thereof are added to a

distribution fund or otherwise used for the benefit of investors.

5.     Defendant waives the entry of findings of fact and conclusions of law pursuant to

Rule 52 of the Federal Rules of Civil Procedure.

6.     Defendant waives the right, if any, to a jury trial and to appeal from the entry of

the Final Judgment.

7.     Defendant enters into this Consent voluntarily and represents that no threats,

offers, promises, or inducements of any kind have been made by the Commission or any

member, officer, employee, agent, or representative of the Commission to induce Defendant to

enter into this Consent.

8.     Defendant agrees that this Consent shall be incorporated into the Final Judgment

with the same force and effect as if fully set forth therein.

9.    Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

10.    Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

11.    Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this

action, Defendant understands that it shall not be permitted to contest the factual allegations of the complaint in this action.

12.     Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegation in the complaint or order for proceedings." 17 C.F.R. § 202.5(e). In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

13.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

14.     Defendant agrees that it will cooperate fully with the Commission in any and all investigations, litigations, or other proceedings relating to or arising from the matters described in the Complaint by undertaking to do the following:

a.     Produce, without service of a notice or subpoena, any and all non-privileged documents and other information reasonably requested by the Commission's staff;

b.     Use its best efforts to encourage its employees, officers, or directors to be interviewed by the Commission's staff at such times and places as the staff reasonably may request;

c.     Use its best efforts to encourage its employees, officers, or directors to appear and testify truthfully and completely without service of a notice or subpoena in such investigations, depositions, hearings, or trials as may be reasonably requested by the Commission's staff;

d.     Agree that any notice or subpoena issued to Defendant in connection with any and all investigations, litigations, or other proceedings relating to or arising from the matters described in the Complaint may be served by regular mail or facsimile transmission on its undersigned attorney at the address set forth underneath his name; and

e.     Consent to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

15.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

6

16.     Defendant agrees that this Court shall retain jurisdiction over this matter for the

purpose of enforcing the terms of the Final Judgment.


Veritas Software Corporation

By: _____

[Name]      Art Courville
[Title]     Director, SVP, Corporate Legal Affairs & Secretary
[Address]   Symantec Corporation
            20330 Stevens Creek Blvd.
            Cupertino, CA 95014

        On February 9  , 2007, Art Courville            , a person known to me,
personally appeared before me and acknowledged executing the foregoing Consent with full
authority to do so on behalf of Veritas Software as its Director, SVP, Corporate Legal Affairs & Secretary
                                  Corp.

                                    Sofia Romero
                                    Notary Public
                                    Commission expires: 10·23·08

SOFIA ROMERO
Comm. # 1521270
NOTARY PUBLIC-CALIFORNIA
Santa Clara County
My Comm. Expires Oct. 23, 2008

Approved as to form:

_____

William R. Baker III
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304

Attorney for Defendant